**Vicki LUZ, Appellant,**

v.

**HART SCHAFFNER & MARX, Appellee.**

No. 93A02–0110–EX–645.

Court of Appeals of Indiana.

July 25, 2002.

tional question. *Daugherty v. Allen,* 729 N.E.2d 228, 233 (Ind.Ct.App.2000), *trans. dismissed.*

James O. Wells, Jr., Wells Law Office, P.C., Rochester, Indiana, Attorney for Appellant.

Kevin W. Kearney, Hunt Suedhoff Kalamaros LLP, South Bend, Indiana, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge..

Vicki Luz appeals an award from the Indiana Worker's Compensation Board (the Board) in favor of her former employer, Hart Schaffner & Marx (Hart Schaffner). The Board denied her claim for benefits, finding that her claim was barred by the two-year statute of limitations for a claim under the Worker's Compensation Act. Luz presents the following restated issue for review: Did the Board err in determining that her Application for Adjustment of Claim was not filed within the statute of limitations and therefore, must be dismissed for lack of jurisdiction?

We affirm.

The facts most favorable to the Board's decision reveal that Luz was employed by Hart Schaffner from January 4, 1994 until she was terminated on August 27, 1997. Luz began having bilateral wrist problems in February 1995, for which she prepared a written accident report on November 27, 1995. Initially, Luz did not miss any work due to the reported injury. On November 27, 1995, the injury was deemed compensable, and the parties entered into an Agreement as to Compensation which was filed with the Worker's Compensation Board. Under the agreement, Luz received medical treatment paid for by Hart Schaffner from February 21, 1996 through and including December 11, 1997. Her initial assessment with Dr. Dion D. Chavis indicated that she had de Quervain's syndrome with overuse syndrome. Noting some im-

provement, Dr. Chavis discharged Luz with no permanent partial impairment on March 13, 1996. Luz returned to Dr. Chavis in July 1996 complaining of worsening symptoms. After meeting with Luz again, Dr. Chavis's diagnosis of Luz was de Quervain's syndrome with radial tunnel syndrome. On September 30, 1996, Dr. Chavis performed surgery on Luz's hand. Approximately one week prior to the operation Luz began receiving temporary total disability (TTD). Luz received TTD in the amount of $272.91 weekly from September 24, 1996 until October 2, 1996, when she returned to work. After returning to work for a period of time, Luz began experiencing difficulties again in January 1997. Because of continuing problems, Hart Schaffner referred Luz to Dr. Robert M. Baltera for further consultation on March 13, 1997. In March 1997, Luz also began treatment with her own physician, Dr. William Fish at Fulton County Medical Clinic. On August 27, 1997, Luz arrived at work wearing a wrist splint recommended by Dr. Fish. Upon seeing the wrist splint, Jim Rooney, Luz's supervisor, told Luz that if she could not do her job, he had nothing else for her to do, and she might as well go home. Shortly thereafter, Luz received notice of her termination.

Luz received unemployment compensation from September 27, 1997 through March 3, 1998. On October 22, 1998, Luz filed her Application for Adjustment of Claim for the aforementioned injury. A single hearing judge found, and the Full Worker's Compensation Board affirmed, that no fraud or coercion on the part of the employer precluded Luz from filing her application in a timely fashion. As such, her claim was barred by the two-year statute of limitations for a claim under the Worker's Compensation Act.

■ In an appeal from a decision of the full Worker's Compensation Board, we are bound by the Board's findings of fact and may only consider errors in the Board's conclusions of law. *See* Ind.Code Ann. § 22–3–4–8(b) (West 1991). We cannot disturb the Board's factual determinations unless we conclude that the evidence is undisputed and leads inescapably to a contrary result. *Eastham v. Whirlpool Corp.*, 524 N.E.2d 23 (Ind.Ct.App.1988), *trans. denied.* We disregard all evidence unfavorable to the Board's findings of fact and consider only the facts and reasonable inferences which support those findings. *Id.* While this court is not bound by the Board's interpretations of law, we should reverse only if the Board incorrectly interpreted the Worker's Compensation Act. *See Houchins v. Kittle's Home Furnishings*, 589 N.E.2d 1190 (Ind.Ct.App.1992). We will construe the Worker's Compensation Act liberally in favor of the employee. *R.L. Jeffries Trucking Co., Inc. v. Cain*, 545 N.E.2d 582 (Ind.Ct.App.1989), *trans. denied.*

■ IC § 22–3–3–27(a) (West 1991) provides that the Board has continuing jurisdiction to modify or change awards. Subsection (c) provides:

> The board shall not make any such modification upon its own motion nor shall any application therefore be filed by either party after the expiration of two (2) years from the last day for which compensation was paid under the original award made either by agreement or upon hearing, except that applications for increased permanent partial impairment are barred unless filed within one (1) year from the last day for which compensation was paid. The board may at any time correct any clerical error in any finding or award.

Luz contends that her claim was timely filed. She argues that the two-year statute of limitations imposed by IC § 22–3–3–27 should not relate back to the last payment of TTD, but should relate to the time

when the permanency of the injuries was discernible.[2] She reasons that because she was not aware of the permanence of her injury, her claim for adjustment should not be time-barred. She argues that Dr. Baltera's examination and report of March 13, 1997 is the first suggestion of the permanency of her injuries. Even then, Luz urges that Dr. Baltera's report indicates 0% permanent partial impairment rating. Luz further argues that it is not until the October 8, 1997 permanent partial disability rating of 16% of the whole person by Sagamore Rehabilitation Center[3] and the December 11, 1997 report by Dr. Chavis[4] rendering an 8% permanent partial impairment rating of the left upper extremity that there were any real indications of the permanence of Luz's injuries. Furthermore, she maintains that the results of those reports were not provided to her, and she had no knowledge that her injuries had been declared permanent.

We are unconvinced by Luz's argument that because the results of the October 8, 1997 and December 11, 1997 reports were not provided to her, and she had no knowledge of the permanence of her injuries, the two-year statute of limitations should not bar her claim. We decline to hold that a claimant can avoid the time limitations imposed by IC § 22–3–3–27 merely by avoiding or failing to affirmatively obtain the results of her diagnosis. Such an interpretation would eviscerate the purpose and intent of the two-year statute of limitation provided by IC § 22–3–3–27. The language of the statute is clear that while the Board has the power to modify awards, applications for such modification must be filed within two years from the last day of compensation paid under the original award.

The evidence shows that from February 1996 through August 1997, Luz sought

---

**2.** Luz cites our opinion, *Union City Body Co., Inc. v. Lambdin*, 569 N.E.2d 373 (Ind.Ct.App. 1991), for the proposition that where a job-related injury is the result of continuous, day-after-day events rather than an isolated incident, the statute of limitations will commence to run when permanence is discernible. While we recognize the rule espoused in that decision, it has been held to apply only to an initial claim for compensation under Ind. Code Ann. § 22–3–3–3 (West 1991). *Id.* This is distinguishable from the instant case where an original award was previously filed with the Worker's Compensation Board, and the claimant is now requesting modification of the original award. In such a case, the time limitations imposed by IC § 22–3–3–27 control.

**3.** The report states in relevant part:

According to figure 26 on page 36 of the Guides, the patient's limitation of (L) wrist flexion to 40 merits a 3% impairment and her limitation of (L) wrist extension to 50 merits a 2% impairment. According to Figure 29 on page 38 of the Guides, the patient's limitation in ulnar deviation of the (L) wrist to 20 merits a 2% impairment and her radial deviation of 20 is WNL. Total

(L)UE [sic] impairment due to limitation of wrist ROM is 7%. Using the patient's grip strength at setting # 3 on the hand dynamometer, the patient's (L) hand strength loss is 57%. According to Table 34 on page 65 of the Guides, this merits a 20% UE impairment due to strength loss. Using combined values chart on page 322 of the Guides, **the patient's (L)UE impairment due to loss of wrist ROM and loss of strength is 26%.** (This correlates with a 16% whole person impairment if that rating is desired.)

*Appellant's Appendix* at 98 (emphasis in original).

**4.** Dr. Chavis's report states in relevant part:

Taking into consideration my most recent physical exam as well as the objective findings from Ms. Luz's impairment evaluation. [sic] I believe that 26% impairment of the patient's left upper extremity is excessive. At her last visit Ms. Luz described dramatic improvement in her discomfort as well as gains in strength and stamina. In my opinion, a more accurate impairment for Ms. Luz would be eight percent of the left upper extremity.

*Appellee's Appendix* at 43.

treatment for her injury and was placed on various work restrictions. Based on consultations with numerous doctors, it was evident that Luz was aware that the cumulative effects of her work had resulted in her injury. Luz further entered into an Agreement as to Compensation with Hart Schaffner for TTD payments. The payments ended on October 2, 1996, and Luz had two years from that date to file an application for modification of benefits.

The Board correctly concluded that Luz's adjusted claim was barred by the statute of limitations because she filed the claim more than two years after the last date that she received TTD under the original award.

The decision of the Worker's Compensation Board is affirmed.

BROOK, C.J., and SHARPNACK, J., concur.