**Gary GERLACH, Appellant–Petitioner,**

v.

**Larry Gene WOODKE, Appellee–Respondent.**

**No. 93A02–0710–EX–903.**

Court of Appeals of Indiana.

Feb. 28, 2008.

Mark D. Gerth, Kightlinger & Gray, LLP, Indianapolis, IN, Attorney for Appellant.

Michael J. O'Reilly, Lafayette, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

### Case Summary and Issue

Gary Gerlach appeals the decision of the Full Worker's Compensation Board (the "Board") affirming the decision of a hearing member, who concluded Gerlach's employee, Larry Woodke, was eligible for worker's compensation benefits. On appeal, Gerlach raises one issue, which we restate as whether the hearing member properly found that Woodke was not a farm or agricultural employee within the meaning of Indiana Code section 22–3–2–9(a). We affirm, concluding the evidence presented to the hearing member establishes that at the time of his injury, Woodke was not working as a farm or agricultural employee.

### Facts and Procedural History

Gerlach owns and operates a 685–acre family farm that is comprised of several separate tracts of land in Pulaski County. At some point in 2000, Gerlach hired Woodke on a regular basis, having previously used him for occasional "odds and end" jobs. Appellant's Appendix at 9. As a regular employee, Woodke worked approximately twenty-five to thirty hours per week and performed tasks such as repairing and maintaining farm equipment, fixing hog feeders, hauling feed among the tracts, operating ground-planting and harvesting equipment, sorting and loading hogs, and supervising operations in Gerlach's absence.

On March 24, 2004, Woodke was seriously injured while assisting a welder Gerlach had hired to extend the frame on one of his feed trucks. On June 18, 2004, Woodke filed a claim for worker's compensation benefits with the Board. On July 22, 2005, the parties filed a joint motion waiving their right to a hearing. The motion also stipulated that Woodke was injured during the course of his employment with Gerlach and that the depositions of Woodke and Gerlach were admissible to determine whether Woodke was a farm or agricultural employee within the meaning of Indiana Code section 22–3–2–9(a). On November 25, 2005, the hearing member entered an order finding that Gerlach was not a farm or agricultural employee. Based on this finding, the hearing member concluded Woodke was eligible for worker's compensation benefits. On September 27, 2007, the Board affirmed the hearing member's decision. Gerlach now appeals.

### Discussion and Decision

#### I. Standard of Review

We initially address some uncertainty regarding the proper standard of review to apply in cases such as this one where the parties stipulated to the admissibility of evidence from which the hearing member could make findings of fact. Indiana Code section 22–3–4–8(b) permits a party to appeal the Board's decision to this court "for errors of law under the same terms and conditions as govern appeals in ordinary civil actions." In light of subsection 8(b), we have stated that we will not disturb the Board's findings of fact "unless we conclude that the evidence is undisputed and leads inescapably to a contrary result" and that we "may consider only that evidence which tends to support the Board's determination, together with any uncontradicted adverse evidence." *Cavazos v. Midwest Gen. Metals Corp.*, 783 N.E.2d 1233, 1239 (Ind.Ct.App.2003). As to questions of law, we have stated we are not bound by the Board's interpretations and "should reverse only if the Board incorrectly interpreted the Worker's Compensation Act." *Luz v. Hart Schaffner & Marx*, 771 N.E.2d 1230, 1232 (Ind.Ct.App.2002), *trans. denied.* Gerlach argues a de novo standard of review applies because "the facts are not in dispute and the question is

primarily a legal one." Appellant's Brief at 5 (citing *Justiniano v. Williams*, 760 N.E.2d 225 (Ind.Ct.App.2001), *trans. denied)*. Although we agree that a de novo standard applies, it is not because the question presented is a legal one.

■ The Board's subject matter jurisdiction turns on whether Woodke is a farm or agricultural employee. *See* Ind.Code § 22–3–2–9(a) (precluding such employees from receiving worker's compensation benefits). Our supreme court has outlined the process a reviewing court should take to determine the standard of review to apply where a trial court dismisses a case for lack of subject matter jurisdiction, *GKN Co. v. Magness*, 744 N.E.2d 397, 400–01 (Ind.2001), and this court has adopted that process in worker's compensation cases, *Stytle v. Angola Die Casting Co.*, 783 N.E.2d 316, 320–22 (Ind.Ct.App.2003). First, the reviewing court must determine whether the facts are disputed. If the facts are not disputed, a de novo standard applies. If the facts are disputed, the reviewing court must determine whether the trial court resolved the factual dispute by conducting a hearing or by reviewing a "paper record." *Magness*, 744 N.E.2d at 401. The former involves "evaluating the character and credibility of witnesses," and in such cases the reviewing court should reverse only where the finding is clearly erroneous. *Id.* The latter, however, occurs where the reviewing court is "in as good a position as the trial court to determine whether the court has subject matter jurisdiction," and in such cases a de novo standard applies. *Id.* (quoting *MHC Surgical*

*Ctr. Assocs., Inc. v. State Office of Medicaid Policy & Planning*, 699 N.E.2d 306, 308 (Ind.Ct.App.1998)).

■ Here, the parties stipulated to the admissibility of the depositions of Gerlach and Woodke as evidence relevant to whether Woodke was a farm or agricultural employee. The deposition testimony of Gerlach and Woodke is not so much itself in dispute as it is that the parties dispute whether it establishes that Woodke was or was not a farm or agricultural employee. Notwithstanding this semantic difference, for purposes of deciding the first step of the process outlined in *Magness*, it is sufficient to say that the evidence relevant to determining whether Woodke was a farm or agricultural employee is disputed. Moreover, because the hearing member's determination was based on the review of deposition transcripts, his finding that Woodke was not a farm or agricultural employee was based on a "paper record." Thus, consistent with *Magness*, we apply a de novo standard of review,[1] but construe the Worker's Compensation Act liberally in favor of the employee. *Luz*, 771 N.E.2d at 1232.

## II. Woodke's Status as a Farm or Agricultural Employee

With several exceptions not relevant to this case, Indiana Code section 22–3–2–9(a) precludes "farm or agricultural employees" from receiving worker's compensation benefits for work-related injuries. Indiana caselaw has interpreted this provision to mean that not all employees of farmers are

---

1. Our decision to apply a de novo standard of review ultimately does not benefit Gerlach because we decide the case in Woodke's favor. Nevertheless, although the standard of review *is not outcome-determinative in this* case, it often is in a significant number of cases. To that end, we remind Woodke's counsel that our appellate rules require the

appellee to state the applicable standard of review in the argument section of the brief. *See* Ind. Appellate Rules 46(A)(8)(b) (stating that the appellant's brief "must include for each issue a concise statement of the applicable standard of review") and 46(B) ("The Appellee's Brief shall conform to Section A of this Rule....").

precluded from receiving benefits; instead, "the whole character" of the work the employee performs must be considered, *Rieheman v. Cornerstone Seeds, Inc.*, 671 N.E.2d 489, 492 (Ind.Ct.App.1996), *trans. denied*, not the work performed at the time of the injury or the nature and scope of the employer's business, *H.J. Heinz Co. v. Chavez*, 236 Ind. 400, 407, 140 N.E.2d 500, 504 (1957). Indiana appellate courts have, however, recognized an exception to the rule precluding consideration of the work performed at the time of the injury where the employee worked in a "dual capacity." *Smart v. Hardesty*, 238 Ind. 218, 220, 149 N.E.2d 547, 549 (1958); *see also Evansville Veneer & Lumber Co. v. Mullen*, 116 Ind.App. 616, 619, 65 N.E.2d 742, 744 (1946) ("And an employee may work in a dual capacity for the same employer and be covered by the Act while engaged in one capacity and excluded from its benefits while engaged in the other.").

Several cases illustrate the rule and its exception. In *H.J. Heinz*, our supreme court reversed the Board's finding that the employee was not a farm or agricultural employee, concluding such finding was "not supported by the evidence." 236 Ind. at 408, 140 N.E.2d at 504. The employee's sole task in *H.J. Heinz* was to pick cucumbers in fields owned by either the employer or by farmers whose crops were under contract with the employer. While driving with several coworkers to one of the fields, the employee was killed when a train struck his vehicle. In concluding the Board's finding was clearly erroneous, our supreme court reasoned that the employee was a farm or agricultural employee because

> [i]t is difficult to conceive of any employment in which the work performed is more closely related to farming and agriculture than is true of the harvesting of cucumbers or like farm produce. Here the workman walks among the

vines, stoops within a few inches of the soil and, by hand, pulls the cucumbers of the proper size, one at a time, and places them in a container which he carries with him.

*Id.* at 404, 140 N.E.2d at 503; *see also Rieheman*, 671 N.E.2d at 493 (analogizing to *H.J. Heinz* where the employee worked in a corn field and had "no other duties" except to detassel corn, which "required her to walk or ride in a truck between each row of corn and remove by hand the tassels from every corn plant").

In contrast to the *H.J. Heinz* and *Rieheman* courts' application of the general rule, in *Smart* our supreme court applied the "dual capacity" exception, concluding "there was no substantial evidence to support" the Board's finding that the employee was not a farm or agricultural employee. 238 Ind. at 221, 149 N.E.2d at 550. The employee in *Smart* worked as a farm laborer and as a tomato factory canner and was paid a different hourly wage in each capacity. The employee was killed when the tractor he was driving jackknifed and overturned. Although the employee was driving the tractor to the factory to unload tomatoes, at the time of the injury the factory was closed and the employee was receiving the hourly wage rate for a farm laborer. Applying the dual capacity exception, our supreme court concluded the employee was a farm or agricultural employee because he was working as a farm laborer, not as a factory worker, at the time of the injury. *Id.* at 221–22, 149 N.E.2d at 550.

Similarly, in *Mullen*, this court concluded the Board's finding that the employee was not a farm or agricultural employee was "not supported by the evidence." 116 Ind.App. at 620, 65 N.E.2d at 744. The employee in *Mullen* did "everything customary and necessary in the operation of a

farm" but also spent approximately thirty to thirty-five percent of his time working away from the farm at the employer's lumber business. *Id.* at 618–19, 65 N.E.2d at 743. The employee was killed while working on the farm when a horse kicked him in the stomach. This court concluded that "[i]n the most favorable view that could be taken of [the employee's] case, and employing the most liberal construction of the Act permissible to us, the best that could be said is that Mullen was employed in a dual capacity for the same employer." *Id.* at 620, 65 N.E.2d at 744. Applying the dual capacity exception did not yield a different result than applying the general rule, however, because the injury occurred while the employee was working as a farm laborer. *See id.*

Here, Woodke testified that when he was hired as a regular employee, it was his understanding he was hired to perform "mainly mechanic and repair work," but that at some point after his hire he assumed other tasks when several employees quit. Appellant's App. at 20. These tasks included hauling feed among the tracts, operating ground-planting and harvesting equipment, and sorting and loading hogs.

Gerlach testified that when he hired Woodke, "probably the main focus of his labors were to kind of probably work with the mechanical side of things" and that Woodke "kind of pulled maintenance pretty heavy when he first started." *Id.* at 35. Gerlach also testified that approximately twenty-five to thirty percent of Woodke's time was spent on maintenance and repair, that he tried to "put [Woodke] in the shop if possible," *id.* at 33, and that maintenance and repair tasks could last "the better part of that week's time" during certain parts of the year, such as before spring planting, *id.* at 32. Gerlach reiterated much of the testimony described above during the following exchange:

Q  Okay. To sort of wrap this thing up, without putting words in your mouth, it's my understanding that your testimony is number one—can you hear me?

A Yes, I can.

Q  Okay. Number one, you more or less hired Larry to take care of the farm equipment, to do the servicing, right?

A That was probably a large percentage of his time would be devoted to that, to say it was 100 percent of the reason that I hired him, I honestly can't say that is true, but at the beginning he did, when I hired him, yes, that was the focus of his employment was to have somebody that I could lean on to take care of those mechanical situations and repair and service and then with that it kind of broadened out into other different things then, did I answer that fairly.

Q  I believe you did. And I think it's fair to say your answer indicates that the reason—you hired him probably for more than one reason . . . ?

A Exactly.

Q  Primary reason was his mechanical skills?

A Yes, this is true.

Q  And I'm sure you also hired him to pick the corn?

A This is true.

Q  But primarily you needed his mechanical skills?

A Yes.

*Id.* 44–45.

■ The deposition testimony of Gerlach and Woodke, and specifically the excerpts described above, establishes that Woodke worked for Gerlach in a dual capacity. In determining whether an employee is a farm or agricultural employee in either capacity, this court has explained that "farm employee" and "agricultural employee" have substantially the same

meaning and that the latter "is defined as the art or science of cultivating the soil, including the planting of seed, the harvesting of crops, and the raising, feeding and management of live stock or poultry." *Fleckles v. Hille,* 83 Ind.App. 715, 715, 149 N.E. 915, 915 (1925). As such, we conclude Woodke was working as a farm or agricultural employee when he performed tasks such as operating ground-planting and harvesting equipment and sorting and loading hogs, but was not working as such an employee when he performed maintenance and repair work.

█ In dual capacity cases such as this one, our supreme court has instructed reviewing courts to determine the employee's status as a farm or agricultural employee based on the work he was performing at the time of the injury. *Smart,* 238 Ind. at 220–21, 149 N.E.2d at 549. Here, Woodke was injured while assisting a welder Gerlach had hired to extend the frame on one of his feed trucks. Because this constitutes maintenance or repair work, it follows that Woodke was not working as a farm or agricultural employee at the time of his injury.[2] Thus, the hearing member properly concluded Woodke was eligible for worker's compensation benefits.

### Conclusion

At the time of his injury, Woodke was not a farm or agricultural employee within the meaning of Indiana Code section 22–3–2–9(a). Thus, the hearing member proper-

---

2. Gerlach argues Woodke was a farm or agricultural employee by analogizing to a hypothetical case where an employee was initially hired as a delivery driver, but was injured after his task had changed to that of a farm laborer. Although we agree with Gerlach that the hypothetical establishes that the em-

ly concluded Woodke was eligible for Worker's Compensation benefits.

Affirmed.

FRIEDLANDER, J., and MATHIAS, J., concur.

---

ployee was a farm or agricultural employee at the time of his injury, it is not analogous to this case because the evidence does not suggest that Woodke ceased maintenance or repair work. To the contrary, the evidence indicates that the injury giving rise to Woodke's claim resulted from such work.