
FILED

Jul 27 2017, 10:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David M. Lutz
David M. Lutz, LLC
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Michael Ryan Hartman
Shannon A. Middleton
Gutwein Law
Lafayette, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charles O'Keefe, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Top Notch Farms, <br> *Appellee-Defendant.* | July 27, 2017 <br><br> Court of Appeals Case No. <br> 93A02-1702-EX-386 <br><br> Appeal from the Indiana Worker's Compensation Board <br><br> The Honorable Linda Peterson Hamilton, Chairman <br><br> Trial Court Cause No. <br> C-230633 |

**Pyle, Judge.**

## Statement of the Case

Charles O'Keefe ("O'Keefe") appeals the Indiana Worker's Compensation Board's ("Board") denial of his claim for worker's compensation benefits for a work-related injury. The Board concluded that O'Keefe was excluded from receiving worker's compensation benefits under the Worker's Compensation

Act ("WCA") because he was working as a farm or agricultural employee when he was injured, and "farm and agricultural employees" are exempt from the Act. On appeal, O'Keefe argues that, although he worked for a farm, he primarily drove a semi-truck and, therefore, did not qualify as a farm or agricultural employee. We conclude that, even though O'Keefe drove a semi-truck, his work was agricultural in character. Accordingly, we affirm the Board's decision.

We affirm.

## Issue

Whether the Board erred in determining that O'Keefe qualified as a farm or agricultural employee for purposes of the Worker's Compensation Act.

## Facts

Top Notch Farms, Inc. ("Top Notch") is a partnership between three brothers engaged in farming corn and soybeans in White and Jasper counties. In 2013, O'Keefe was looking for a job when he heard that Top Notch was hiring. Brandon Wuethrich, one of the Top Notch partners, told O'Keefe that Top Notch would hire him as a full-time employee if he were "willing to do other jobs other than just driving truck." (Appellant's App. Vol. 2 at 20). O'Keefe responded, "I guess I'm willing to do whatever because I need a job." He then began to work for Top Notch on August 27, 2013. (Appellant's App. Vol. 2 at 20).

[4] During his time working for Top Notch, O'Keefe performed a variety of duties including washing manure off of the farm's trucks, painting the walls of the farm's shop, sweeping the granary, servicing the trucks, and hauling corn and soy beans. In addition to farming, Top Notch was "getting into a manure operation where [it] hauled a lot of manure for other farms." (Appellant's App. Vol. 2 at 21). O'Keefe spent a lot of time hauling manure for this operation or "trying to thaw out the manure pits at the dairy farm." (Appellant's App. Vol. 2 at 22). Top Notch also hired outside truck drivers to help haul manure to fields. These drivers used their own trucks and were paid according to the number of loads they hauled whereas O'Keefe was paid by the hour.

[5] On June 3, 2014, Dustin Wuethrich, one of Top Notch's partners, asked O'Keefe to drive a semi-truck and tanker to Ceres Solutions to pick up liquid fertilizer. At Ceres Solutions, O'Keefe was instructed to stay up on top of the tanker while it was filling with fertilizer. The computer monitoring the fill was supposed to shut down the pump when the tanker was full. O'Keefe followed Ceres Solutions' instructions, but the pump did not shut down like it was supposed to, and the tanker overflowed. As a result, the hose "blew out of the tanker" and knocked O'Keefe off of the top of the tanker. (Appellant's App. Vol. 2 at 73). He fell thirteen feet to a concrete pit below and lost consciousness. When he regained consciousness, he returned to Top Notch

Farms, reported the accident, and then went to the hospital. He never returned to work for Top Notch.[1]

[6] On June 18, 2015, O'Keefe filed an application for worker's compensation benefits with the Board, asserting that Top Notch had refused to treat his injuries as work-related and had not provided any benefits or medical care as required under the WCA. Top Notch's worker's compensation insurance had expired two days prior to his accident. On October 4, 2016, a single hearing member of the Board entered an order denying O'Keefe's claim. The member found that O'Keefe was a farm or agricultural employee at the time of his injury and was, therefore, excluded from relief under the WCA because the WCA exempts "farm or agricultural employees." *See* IND. CODE § 22-3-2-9(a)(2). Subsequently, O'Keefe applied for review by the full Board, and the Board held a hearing on his claim on December 5, 2016. At the conclusion of the hearing, the Board affirmed the single hearing member's decision. O'Keefe now appeals.

## Decision

[7] On appeal, O'Keefe argues that the Board erred when it denied his worker's compensation claim because he was not, as the Board concluded, a farm or agricultural employee when he was injured. He argues that he primarily

---

[1] O'Keefe writes in his Appellant's Brief that he sustained "serious injuries" as a result of his accident on June 3, 2014, but he does not specify what these injuries were. (O'Keefe's Br. 6).

operated a semi-truck on behalf of Top Notch and should therefore be considered a semi-truck driver rather than an agricultural employee.

[8]     Preliminarily, we note that the Board reviewed O'Keefe's claim based on a paper record that included depositions and answers to interrogatories. We have recently stated that our standard of review of an administrative decision that is based on a paper record is as follows:

> In reviewing a worker's compensation decision, an appellate court is bound by the factual determinations of the Board and may not disturb them unless the evidence is undisputed and leads inescapably to a contrary conclusion. We examine the record only to determine whether there is substantial evidence and reasonable inferences that can be drawn therefrom to support the Worker's Compensation Board's findings and conclusion. We will not reweigh the evidence or reassess witness credibility. As to the Board's interpretation of the law, an appellate court employs a deferential standard of review of the interpretation of a statute by an administrative agency charged with its enforcement in light of its expertise in the given area. The Board will only be reversed if it incorrectly interpreted the Act.

*Ward v. Univ. Notre Dame*, 25 N.E.3d 172, 178 (Ind. Ct. App. 2015) (quotation omitted), *reh'g denied*, *trans. denied.*

[9]     The Board's denial of O'Keefe's worker's compensation claim was based on its determination that he was a farm or agricultural employee for purposes of the WCA. The WCA requires employers to "'provide their employees with compensation for personal injuries caused by an accident arising out of and in the course of employment.'" *Thompson v. York Chrysler*, 999 N.E.2d 446, 450

(Ind. Ct. App. 2013) (quoting *Outlaw v. Erbrich Products Co., Inc.*, 777 N.E.2d 14, 25 (Ind. Ct. App. 2002), *reh'g denied*, *trans. denied*). However, INDIANA CODE § 22-3-2-9(a)(2) of the WCA exempts "farm or agricultural employees" from receiving worker's compensation benefits for work-related injuries. Whether a worker is a farm or agricultural employee depends on the "'whole character' of the work the employee performs," rather than the "work performed at the time of the injury or the nature and scope of the employer's business." *Gerlach v. Woodke*, 881 N.E.2d 1006, 1012 (Ind. Ct. App. 2008) (quoting *Rieheman v. Cornerstone Seeds, Inc.*, 671 N.E.2d 489, 492 (Ind. Ct. App. 1996), *trans. denied*), *trans. denied*. The terms "farm employee" and "agricultural employee" have substantially the same meaning. *Rocky River Farms, Inc. v. Porter*, 925 N.E.2d 496, 498 (Ind. Ct. App. 2010), *trans. denied*. Agriculture is defined as "'the art or science of cultivating the soil, including the planting of seed, the harvesting of crops, and the raising, feeding, and management of live[]stock or poultry.'" *Id.* (quoting *Gerlach*, 881 N.E.2d at 1012).

[10] O'Keefe argues that his driving of a semi-truck was not agricultural in nature and, therefore, he was not an agricultural employee. In support of this argument, he notes that although he frequently transported manure or fertilizer for farm work, he did not apply the manure or fertilizer to any fields; nor did he work in any fields. He also suggests that in *Gerlach* we held that "maintenance work including work on farm machinery" was not agricultural. (Appellant's Br. 19).

[11]     However, O'Keefe's argument regarding *Gerlach* is misguided. *Gerlach* specifies that, in determining whether work is agricultural in nature, we look to the "whole character" of the work. *Gerlach*, 881 N.E.2d at 1012. Therefore, maintenance work is not categorically non-agricultural. In some instances, maintenance work may be considered agricultural. We described this distinction further in *Makeever v. Marlin*, 174 N.E. 517, 518 (Ind. Ct. App. 1931) (internal quotation omitted), where we approved the following explanation from the Supreme Court of Minnesota:

> A workman is not a farm laborer simply because at the moment he is doing work on a farm; nor because the task on which he is engaged happens to be what is ordinarily considered farm labor. The employee of an implement dealer does not become a farm laborer while engaged in correcting the behavior of a self-binder in the grain field of the owner, a farmer and customer of the dealer. Nor would the employee of a well digger become a farm laborer while stabling horses used on the drilling outfit. But a farmer's hired man would not cease to be a farm laborer while adjusting harvesting machinery or stabling the horses of a contractor drilling a well on the place. The modern farm laborer doubtless does much work on the rapidly increasing electrical equipment on farms. He continues a farm laborer while he does it. But an electrician sent out from town to do the same thing would not become a farm laborer for the occasion. So also a farm laborer does not step out of his own part while doing carpenter work for his farmer employer in the repair of farm buildings. Neither does the carpenter who comes on to the farm for the job of carpentry and nothing more. One continues a farm laborer and the other does not become one.
>
> Inasmuch as farm laborers are not subject to the Compensation Law and most others are, two men, for example a farm laborer

and the expert mechanic employed by the implement dealer, may be engaged on the same task and be injured, both of them, by the same accident, and yet only one be entitled to workmen's compensation. Neither the pending task nor the place where it is being performed is the test. The whole character of the employment must be looked to to determine whether he is a farm laborer.

In *Gerlach*, we held that the employee was hired to perform "mainly mechanic and repair work" and only began to take on other agriculturally-related work when other employees quit. *Gerlach*, 881 N.E.2d at 1011. Therefore, his mechanic and repair work was non-agricultural. *Id.* In other words, our decision was based on our determination that the "whole character" of Gerlach's mechanical work was non-agricultural, not because mechanical work can never be agricultural.

[12] As for the "whole character" of O'Keefe's work, the record reveals that Top Notch hired O'Keefe to complete general tasks required around its farms. Towards that end, O'Keefe performed a variety of work during his employment with Top Notch, including washing manure off of the farm's trucks, painting the walls of the farm's shop, sweeping the granary, servicing the trucks, and hauling corn, soy beans, and manure. He admits that although he primarily drove a semi-truck for Top Notch, the overall character of his employment was to perform any task that needed to be completed on the farm. Moreover, his tasks as a semi-truck driver were integrally related to the work of a farm. He hauled manure and fertilizer, which are necessary for growing crops. He then transported those crops after harvest. We have previously held that

transporting crops may be agricultural in nature. *See Smart v. Hardesty*, 149 N.E.2d 547 (Ind. 1958) (finding that employee worked in a dual capacity and was working as an agricultural employee when he transported tomatoes to a canning factory). O'Keefe's hourly wage, which was not dependent on how many loads he hauled, is further evidence that his employment was based on completing general tasks required of him by Top Notch. In contrast, Top Notch paid the employees it had hired solely to haul manure by the load rather than by the hour.

[13] In light of these various factors, we conclude that the whole character of O'Keefe's employment was agricultural in nature. Accordingly, we affirm the Board's decision that O'Keefe was exempt from the WCA and could not receive worker's compensation benefits under the Act.[2]

[14] Affirmed.

May, J., and Brown, J., concur.

---

[2] Alternatively, O'Keefe argues that he worked in a "dual capacity"—as an agricultural employee and as a semi-truck driver. In cases where an employee is employed in a dual capacity, we must determine the employee's status as a farm or agricultural employee based on the work he was performing at the time of the injury. *Gerlach*, 881 N.E.2d at 1012. However, because we have determined that O'Keefe was an agricultural employee at all times, we need not address this distinction.