## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 18 2017, 11:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Elliot L. McKinnis
Withered Burns, LLP
Lafayette, IN

ATTORNEYS FOR APPELLEE

Mark X. Sullivan
Treacy & Sullivan
Lebanon, IN

# IN THE
# COURT OF APPEALS OF INDIANA

Jimmy Dean Austin,
*Appellant-Plaintiff,*

v.

Jon Templin,
*Appellee-Defendant*

October 18, 2017

Court of Appeals Case No.
93A02-1705-EX-01187

Appeal from the Indiana Worker's Compensation Board

The Honorable Linda P. Hamilton, Chairperson

Board Application No.
C-230690

**Vaidik, Chief Judge.**

# Case Summary

[1]     Jimmy Dean Austin appeals the Indiana Worker's Compensation Board's ("Board") denial of his claim. Austin was injured while working on a farm.

After conducting a hearing, the Board concluded that Austin was not entitled to receive worker's compensation benefits because he qualified as a farm or agricultural employee under Indiana's Worker's Compensation Act. Austin contends that the Board erred in reaching its decision because, despite working on a farm, he primarily drove a semi-truck. Austin argues that he was a commercial laborer and not a farm employee and that he was therefore eligible for worker's compensation benefits. Based on the whole character of Austin's employment, we affirm the Board's conclusion.

## Facts and Procedural History

In September 2014, Jon Templin hired Austin to work on his family's farm in Bringhurst. Austin was employed as a full-time "farm hand." Tr. p. 30. He was tasked with a variety of jobs around the farm: use a semi-truck to transport harvested grain from the field to on-site storage and deliver grain to nearby commercial plants, feed livestock, load livestock onto trailers for transport, wash windows, blow out air filters, operate a grain buggy, build a fence, erect a new wall inside the barn, and build a pen for calves and a chicken coop. *Id.* at 30-33. In other words, Austin "did everything except [operate the] combine." *Id.* at 21.

Templin owned three semi-trucks that were used for hauling grain. The semi-trucks were licensed for farm use only, meaning they could not be used to deliver goods to the farm, nor could they be used by other local farms. The semi-trucks could be used only for Templin's farm to haul harvested grain to

either on-site storage or off-site commercial plants. Because it was harvest time when Austin was hired, his primary work assignment was driving one of the semi-trucks. Austin did not have a commercial driver's license (CDL), and he was hired to work exclusively for Templin. Having someone drive the semi-trucks was "an absolute necessity" because it was how Templin moved the crops from the field to on-site storage and from storage to commercial plants. *Id.* at 24-25, 50-51.

[4] When Austin loaded or unloaded a semi-truck with grain, he was responsible for ensuring that the machinery used did not malfunction. On the morning of December 10, 2014, Austin was loading grain from one of the on-site storage bins into one of Templin's semi-trucks. The grain was to be delivered to a commercial plant down the road. It took approximately forty to forty-five minutes for the grain to be loaded, so Austin stayed inside the truck's cab to keep warm. Near the end of the load time, Austin noticed that the machinery was malfunctioning and stepped out of the cab to turn it off. As Austin exited the cab, his foot slipped and he fell to the ground, but his left arm "stayed up in the side rail of the truck." *Id.* at 45. Austin suffered injuries to his "left upper extremity." Appellant's App. Vol. II p. 11.

[5] In June 2015, Austin filed an Application for Adjustment of Claim with the Board. In the application, Austin stated that he was "injured during the scope of his employment" with Templin. *Id.* He described the injury as a twisting of his arm while exiting the cab of the semi-truck.

[6]     A hearing was held in September 2016 before a single member of the Board to determine if Austin was a farm or agricultural employee when working for Templin. Under Indiana Code section 22-3-2-9, farm and agricultural employees are generally excluded from receiving worker's compensation benefits. After the hearing, the Board member entered written findings of fact and conclusions. In relevant part, the member found:

> 3. On September 18, 2014, Plaintiff was hired by Defendant as a general laborer at Defendant's farm and worked in that capacity on a continuous, full-time basis until December 18, 2014.
>
> * * * * *
>
> 5. During the three-month period Plaintiff was employed by Defendant, he performed a variety of farm-related tasks, including the feeding of livestock; the disking [of] farm ground; operating a grain buggy in the field during harvest; driving Defendant's tractor-trailer trucks to haul harvested crops from the field; the loading of harvested grain from Defendant's tractor-trailers into Defendant's storage bins; and the transport of Defendant's grain to local dealers for sale.
>
> * * * * *
>
> 19. Defendant's tractor-trailer trucks are a critical component of the harvesting process because without them Defendant's harvested crops could not be transported from the field to the storage bins for drying and then to a dealer for sale.
>
> 20. Having his own tractor-trailer trucks is viewed by Defendant as a necessity during harvest time because of the

competition with other farmers who are also, at the same time, transporting harvested crops from the field.

21. Plaintiff did not have a commercial driver's license on the date of the incident and has never been a commercial driver by trade or occupation.

22. Driving Defendant's tractor-trailer trucks was just one of the tasks Plaintiff performed for Defendant in connection with his work at Defendant's farm.

23. There would be no reason for Defendant to plant, raise and harvest a crop unless he had the means to transport the harvested crop from the field and, eventually, to a dealer for sale.

*Id.* at 8-9. The Board member ultimately concluded, "The farm exemption set forth in Indiana Code § 22-3-2-9 is applicable to this case and exempts Plaintiff from coverage under the Act for his accidental injury." *Id.* at 9. Austin then sought review of the decision by the full Board. In April 2017, after hearing arguments from both sides, the Board adopted the single member's decision.

Austin now appeals.

# Discussion and Decision

Austin argues that the Board incorrectly classified him as a farm employee when he was working for Templin. Our standard for reviewing decisions by the Board is well established:

In reviewing a worker's compensation decision, an appellate court is bound by the factual determinations of the Board and may not disturb them unless the evidence is undisputed and leads inescapably to a contrary conclusion. We examine the record only to determine whether there is substantial evidence and reasonable inferences that can be drawn therefrom to support the Worker's Compensation Board's findings and conclusion. We will not reweigh the evidence or reassess witness credibility. As to the Board's interpretation of the law, an appellate court employs a deferential standard of review of the interpretation of a statute by an administrative agency charged with its enforcement in light of its expertise in the given area. The Board will only be reversed if it incorrectly interpreted the Act.

*O'Keefe v. Top Notch Farms*, 79 N.E.3d 1000, 1003 (Ind. Ct. App. 2017).

[9] Austin does not dispute the Board's findings of fact but challenges its conclusion that he was a farm employee instead of a commercial laborer. Again, Indiana law generally excludes farm and agricultural employees from receiving benefits under Indiana's Worker's Compensation Act. *See* Ind. Code § 22-3-2-9(a)(2). "The terms 'farm employee' and 'agricultural employee' have substantially the same meaning." *Rocky River Farms, Inc. v. Porter*, 925 N.E.2d 496, 498 (Ind. Ct. App. 2010), *trans. denied*. "Agriculture" is defined as "the art or science of cultivating the soil, including the planting of seed, the harvesting of crops, and the raising, feeding, and management of livestock or poultry." *Id*. "Whether a worker is a farm or agricultural employee depends on the **whole character** of the work the employee performs, rather than the work performed at the time of the injury or the nature and scope of the employer's business." *O'Keefe*, 79 N.E.3d at 1003 (internal quotations omitted) (emphasis added).

[10] Austin claims that he was "a truck driver 80% of the time" and therefore must be classified as a commercial laborer and not a farm employee. *Id.* at 12; Tr. Vol. II p. 50. This argument is flawed for two reasons. First, Austin did not possess a CDL nor were Templin's trucks licensed for commercial use. Additionally, the 80% figure represents all of Austin's driving duties—hauling grain from the fields to on-site storage and hauling grain to commercial plants. Austin incorrectly assumes that **any** hauling and transporting of crops is a commercial activity. But transporting crops "may be agricultural in nature." *O'Keefe*, 79 N.E.3d at 1004. In *O'Keefe*, the worker primarily drove a semi-truck for a farm, hauling manure, fertilizer, and crops after harvest. O'Keefe was also tasked with other jobs around the farm like washing and servicing the trucks, painting walls of the farm's office, and sweeping the granary. We concluded that the whole character of O'Keefe's employment was farm related. *Id.*

[11] It is undisputed that Austin's duties included loading and hauling harvested grain from the field to Templin's on-site storage bins, loading and delivering grain to nearby commercial plants, feeding livestock, loading livestock onto trailers for transport, washing windows, blowing out air filters, operating a grain buggy, building a fence, erecting a new wall inside the barn, and building a pen for calves and a chicken coop. Austin even admitted that driving the semi-truck was an integral part of the farm work. *See* Tr. pp. 50-51, 54. The Board said it best in finding of fact 23: "There would be no reason for [Templin] to plant, raise and harvest a crop unless he had the means to transport the harvested crop from the field and, eventually, to a dealer for sale." Appellant's

App. Vol. II p. 9. In other words, harvest is not completed until the grain has been transported from the field to a storage location, be it on or off site. Accordingly, hauling the grain was related to harvesting Templin's crops.

[12] Austin also contends that an employee can perform work that is related to or necessary for agriculture or work with farm equipment and not be labeled a farm or agricultural worker. He directs our attention to several cases decided by this Court; however, these cases are readily distinguishable from Austin's situation. The cases he relies on deal with equipment that was rented out to multiple farms (*Hahn v. Grimm*, 101 Ind. App. 74, 198 N.E. 93 (1935); *In re Boyer*, 65 Ind. App. 408, 117 N.E. 507 (1917)), dual-status workers (*Gerlach v. Woodke*, 881 N.E.2d 1006 (Ind. Ct. App. 2008), *aff'd on reh'g*, 886 N.E.2d 41 (Ind. Ct. App. 2008), *trans. denied*), and independent contractors hired to do maintenance and remodeling of farm structures (*Heffner v. White*, 113 Ind. App. 296, 45 N.E.2d 342 (1942), *trans. denied*; *Makeever v. Martin*, 92 Ind. App. 158, 174 N.E. 517 (1931)). None of these cases deal with an employee who was hired to work as a general laborer for a single farm, like Austin was. The case most similar to Austin's situation is *O'Keefe*, which was discussed above.

[13] Austin's final argument is that he was engaged in the "commercial process" of loading grain to take to commercial plants when he was injured and that places him outside of the definition of farm employee. He claims that this Court has not "considered whether delivering a product to an outside buyer after it had been stored on a farm is a task that brings an employee within the [Worker's Compensation] Act's farm exemption[,]" Appellant's Br. p. 18, and cites cases

from Texas (*U.S. Fire Ins. Co. v. Alvarez*, 657 S.W.2d 463 (Tex. Ct. App. 1983)) and New Mexico (*Holguin v. Billy the Kid Produce, Inc.*, 110 N.M. 287, 795 P.2d 92, 94 (N.M. Ct. App. 1990)) in support of his argument. But Austin focuses on the task he was doing when he was injured. As discussed above, we look at the whole character of the work, an analysis that Austin acknowledges is proper. *Id.* at 9-10. Accordingly, based on the whole character of Austin's work, we affirm the Board's ruling that Austin is a farm employee and not eligible to receive worker's compensation benefits.

Affirmed.

Mathias, J., and Crone, J., concur.